**Luc ADRAS, et al.,
Plaintiffs–Appellants,**

v.

**Alan C. NELSON, Commissioner of Immigration and Naturalization Service et al., Defendants–Appellees.**

No. 89–5481.

United States Court of Appeals,
Eleventh Circuit.

Nov. 30, 1990.

Ira J. Kurzban, Kurzban Kurzban and Weinger, P.A., Miami, Fla., Debra M. Torres, Fried, Frank, Harris, Shriver & Jacobson, New York City, for plaintiffs-appellants.

Dexter W. Lehtinen, U.S. Atty., Guy W. Harrison, Sheri L. Orlowitz, Linda Collins–Hertz, Anne Ruth Schultz, Karen D. Wherry, Asst. U.S. Attys., Miami, Fla., for defendants-appellees.

Before JOHNSON and CLARK, Circuit Judges, and BROWN *, District Judge.

WESLEY E. BROWN, Senior District Judge.

In this action, black Haitian refugees filed claims for damages arising from their alleged unlawful detention at, and the treatment they received in, the Krome Detention Center in southern Florida during 1981–1982.[1] The defendants here are the officials of the Immigration and Naturalization Service (INS) responsible for their detention. Damages were claimed under the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346, etc., the civil rights provision of 42 U.S.C.A. §§ 1981, 1985(3) and 1986, and the authority of *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Claims were also made under the "alien tort claims" provisions of 28 U.S.C.A. § 1350, and certain sections of the Immigration and Nationality Act, 8 U.S.C.A. §§ 1182(d) and 1329. Pendent claims were also made under state constitutional and tort law.[2]

The district court granted defendants' motion to dismiss this case upon a finding that all claims were barred by doctrines of absolute immunity, qualified immunity, and for failure to state a claim, and lack of pendent jurisdiction. We affirm the order of the district court dismissing this action.

As we add another chapter to the saga of the Haitian nationals, we must once again review the history of the prior litigation.

The plaintiffs here were the plaintiffs in earlier litigation in which they sought writs of habeas corpus as well as injunctive and declaratory relief because of their alleged unlawful detention by INS agents who discriminated against them on the basis of national origin and race. In June, 1982, the District Court for the Southern District

---

* Honorable Wesley E. Brown, Senior U.S. District Judge for the District of Kansas, sitting by designation.

1. Some plaintiffs were previously certified as members of a class in prior litigation including: "All Haitian aliens who have arrived in the Southern District of Florida on or after May 20, 1981, who are applying for entry into the United States and also are presently in detention pending exclusion proceedings in various INS detention facilities, for whom an order of exclusion has not been entered...." *Louis v. Nelson*, 544 F.Supp. 973, 984 (S.D.Fla.1982).

2. Plaintiffs have stated that this action "is brought under the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671–2680, against the United States of America and under the United States Constitution, amendments one, five and eight, federal common law, the United Nations Convention and Protocol Relating to the Status of Refugees, as a *Bivens* action, and Florida constitutional and common law tort against Alan C. Nelson and other named individual defendants...." (Second Amended Complaint at 9).

of Florida found that the INS had failed to promulgate the policy under which the Haitians were detained in accordance with the notice and comment procedures of the Administrative Procedure Act, thereby rendering the policy void and unenforceable. At the same time, the court further found that plaintiffs had failed to prove that they were incarcerated because of their race or national origin. *Louis v. Nelson,* 544 F.Supp. 973 (S.D.Fla.1982). As a result of this decision, the court found that the Haitian nationals were entitled to release on parole pending a determination of their claims for admission to the United States and over 1,000 aliens were released. *Louis v. Nelson,* 544 F.Supp. 1004 (S.D.Fla.1982).

Pending the appeal of this decision, the INS issued a new parole policy which complied with the district court's order and with the notice and comment provisions of the Administrative Procedure Act.

Meanwhile, in the appeal to the Eleventh Circuit, this court reversed the finding that there had been no constitutional violation. A panel of the appellate court held that the Fifth Amendment's equal protection clause applied to unadmitted aliens. *Jean v. Nelson,* 711 F.2d 1455 (11th Cir.1983) (*Jean I*). A rehearing *en banc* followed in the Eleventh Circuit, and the panel decision was vacated. *En banc,* this circuit determined that the APA procedural issue was moot because no class members remained in detention, but it was further held that the Fifth Amendment did not apply to unadmitted aliens seeking parole. *Jean v. Nelson,* 727 F.2d 957 (11th Cir.1984) (*Jean II*). The court did remand the case to the district court to develop a factual record on the question of whether or not restrictions on access to the Haitian detainees violated the First Amendment.[3] The conclusions of the court at that time were summarized in this manner:

> Excludable aliens cannot challenge the decisions of executive officials with regard to their applications for admission, asylum, or parole on the basis of the

rights guaranteed by the United States Constitution. They do have rights, however, to whatever process Congress—and through its regulations and established policies, the Executive Branch—have extended them. Our holding therefore recognizes that while the courts must give proper deference to the plenary power of the political branches to regulate the admission of aliens into our country, the foreigner who comes to our shores with hopes of gaining entry does not stand altogether outside the protection of our laws.

727 F.2d at 984.

The Supreme Court affirmed the *en banc* judgment but explained that the Eleventh Circuit should not have reached the merits of the constitutional question. The court found that since it was conceded that the statute granting parole authority to the Attorney General, 8 U.S.C. § 1182(d)(5)(A) did not include race or national origin as factors relevant to parole determination, the INS was prohibited from considering those factors. The Supreme Court therefore affirmed the *en banc* judgment to the extent that it remanded the case to the district court for a determination of whether or not the INS agents observed the rules. *Jean v. Nelson,* 472 U.S. 846, 105 S.Ct. 2992, 86 L.Ed.2d 664 (1985) (*Jean III*). See also discussion, *Jean v. Nelson,* 863 F.2d 759, 764 (11th Cir.1988) (*Jean IV*), *aff'd Commissioner, Immigration and Naturalization Service v. Marie Lucie Jean et al.,* —— U.S. ——, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990). In so doing, the court limited the remand in this manner:

> Accordingly, we affirm the en banc court's judgment insofar as it remanded to the District Court for a determination whether the INS officials are observing this limit upon their broad statutory discretion to deny parole to class members in detention. On remand the District Court must consider: (1) whether INS officials exercised their discretion under § 1182(d)(5)(A) to make individualized determinations of parole, and (2) whether

---

**3.** The petitioners claimed that the government had placed restrictions on contacts between themselves and outsiders, frustrating the efforts of Haitian Refugee Center attorneys to inform them of their legal rights.

INS officials exercised this broad discretion under the statutes and regulations without regard to race or national origin. 472 U.S. at 857, 105 S.Ct. at 2998, 86 L.Ed.2d at 672.

The Haitian refugees moved for an award of attorney fees and costs under the provisions of the Equal Access to Justice Act after the conclusion of their underlying litigation. The district court thereafter awarded substantial fees to various attorneys and law firms and to the Haitian Refugee Center. On appeal, this circuit held that the plaintiff Haitians were "prevailing parties" in the litigation since the government had conceded that its exclusion orders were invalid, the initial regulations were declared invalid, and plaintiffs had secured their release. The case was remanded, however, to the district court for recalculation of the fee awards. *Jean v. Nelson*, 863 F.2d 759, *supra*.

In dismissing plaintiff's complaint, the district court carefully analyzed the nature of plaintiffs' claims, noting that Counts I through VI alleged multiple violations of state law pursuant to the Federal Tort Claims Act (FTCA). Thus, Count I alleged false imprisonment and conspiracy; Count II claimed abuse of process and conspiracy; Count III, an intentional infliction of emotional distress; Count IV, invasion of privacy and conspiracy; Count V, discrimination and conspiracy; while Count VI claimed a denial of due process, cruel and unusual punishment and conspiracy.

The FTCA, 28 U.S.C.A. § 1346(b) permits suits against the United States for damages—

> ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C.A. § 2674 provides that the United States "shall be liable (relating to tort claims) in the same manner and to the same extent as a private individual under like circumstance...."

An exception to the right to file such an action is made through a provision for discretionary immunity under the provisions of 28 U.S.C.A. § 2680(a), which excludes from FTCA coverage:

> (a)ny claim ... based upon the exercise or performance or the failure to exercise or perform, a discretionary function or duty on the part of a federal agency or an employee of the Government, *whether or not the discretion involved be abused.* (Emphasis supplied)

■ We entirely agree with the district court's conclusion that all of the claims set out by plaintiffs in Counts I through VI arise from the exercise or the performance of a discretionary function on the part of the government and its agents and that the defendants are shielded from liability by the provisions of Section 2680(a), *supra*. As the prior *Jean* litigation discussed above makes clear, plaintiffs are "excludable or unadmitted" aliens and as such "cannot challenge parole decisions as a matter of constitutional right." See *Perez–Perez v. Hanberry*, 781 F.2d 1477, 1479 (11th Cir.1986). In the *Perez* case, Cubans, who were excludable aliens, sought habeas review of their detention and denial of parole. The district court ruled that they were entitled to appointed counsel to present their claims. On appeal, this circuit found that the aliens were not entitled to counsel since, among other considerations, the question of parole was a discretionary decision of the Attorney General:

> The world is not entitled to enter the United States as a matter of right. As we have stated previously, excludable aliens are those who seek admission into the United States but have not achieved entry. *Jean v. Nelson*, 727 F.2d 957, 968 (11th Cir.1984) (en banc) ... These aliens "have no constitutional rights with regard to their applications and must be content to accept whatever statutory rights and privileges they are granted by Congress." *Id.* Parole decisions are deemed an integral part of the admissions process, and excludable *aliens con-*

*sequently cannot challenge parole decisions as a matter of constitutional right.* Fernandez–Roque v. Smith, 734 F.2d 576, 582 (11th Cir.1984); *Jean v. Nelson,* 727 F.2d at 963, 972. This country's immigration policy vests the authority to determine the rights of excludable aliens in the political branches of our government, not the courts. *Garcia–Mir v. Smith,* 766 F.2d 1478, 1484 (11th Cir.1985). (Emphasis supplied)

781 F.2d at 1479.

\* \* \* \* \* \*

It has been firmly established in this circuit that the obverse of this grant of authority to the Attorney General to parole an excludable alien is the power to deny such parole. *Garcia–Mir,* 766 F.2d at 1484–85; *Jean v. Nelson,* 727 F.2d at 977. *In other words, the Attorney General is under no obligation to parole excludable aliens—he may do so in his discretion.*

781 F.2d at 1481–1482. (Emphasis supplied)

Relying on *Berkovitz v. United States,* 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988), and *Westfall v. Erwin,* 484 U.S. 292, 108 S.Ct. 580, 98 L.Ed.2d 619 (1988), plaintiffs contend that even though the INS agents may have been operating within the scope of their employment, they were not exercising "policy-level discretion" at the time of their alleged wrongful acts. In other words, plaintiffs contend that even if the INS action did not violate "the APA, the INA and established government policy," the discretionary exception would not apply since the exception applies only to acts based on public policy considerations.

In *Berkovitz,* which involved federal licensing of oral polio vaccine, the court emphasized that the discretionary function exception "applies only to conduct that involves the permissible exercise of policy judgment." *Berkovitz, supra,* 486 U.S. at 539, 108 S.Ct. at 1960, 100 L.Ed.2d at 543.

The district court noted that "[p]laintiffs were detained as a result of the Attorney General's order requiring INS officials to hold without parole all aliens unable to establish a prima facie case for admission." *Jean III,* 472 U.S. at 849, 105 S.Ct. at 2994, 86 L.Ed.2d at 667. This was clearly the exercise of discretion in its broadest sense, and we agree with the district court that Section 2680(a) shields the United States from FTCA liability and that this result is in accord with *Berkovitz v. United States, supra.*

We also agree that the individual federal defendants are entitled to absolute immunity with respect to any common law tort claims contained in Counts I through VI. The district court found that these defendants were immune for acts arising from "discretionary actions taken while acting within the outer parameters of the scope of their employment" under the teachings of *Westfall v. Erwin, supra,* 484 U.S. 292, 108 S.Ct. 580, 98 L.Ed.2d 619 (1988).

Indeed, if nothing else, the prior *Jean* litigation has settled and defined once and for all the nature of defendants' conduct with reference to these plaintiffs.

In the *en banc* decision of this circuit, we noted that courts may act when "low level officials" *"abuse their discretion"* by acting in violation of official government policy. *Jean v. Nelson, supra,* 727 F.2d at 984. (Emphasis supplied)

In affirming the remand, the Supreme Court limited the issues in this manner:

Accordingly, we affirm the en banc court's judgment insofar as it remanded to the District Court for a determination whether the INS officials are observing this limit upon their broad statutory discretion to deny parole to class members in detention. On remand the District Court must consider: (1) whether INS officials exercised their discretion under § 1182(d)(5)(A) to make individualized determinations of parole, and (2) whether INS officials exercised this broad discretion under the statutes and regulations without regard to race or national origin.

*Jean v. Nelson, supra,* 472 U.S. at 857, 105 S.Ct. at 2998, 86 L.Ed.2d at 672.

It should also be noted that while the nature of defendants' conduct here was *clearly discretionary* under the provisions

of the Federal Tort Claims Act, that Act has been amended so that immunity attaches if the federal agent were acting within the scope of his employment, regardless of whether or not the conduct was "discretionary."[4] Plaintiffs concede that their claims against the individual defendants are based solely on common law tort claims and claims under *Bivens v. Six Unknown Fed. Agents,* Appellants Memorandum, February 20, 1990.

▮ Plaintiffs contend that since the government violated the notice and comment procedures of 5 U.S.C. §§ 551 *et seq.,* the "discretionary function" exception does not apply. In this manner, they attack the *legality* of the rule-making process, an issue not covered by the provisions of the Federal Tort Claims Act. *United States v. Varig Airlines,* 467 U.S. 797, 812, 104 S.Ct. 2755, 2763, 81 L.Ed.2d 660, 672 (1984) "... the Act was not to be extended into the realm of the validity of legislation or discretionary administrative action." See also *Gaunce v. deVicentis,* 708 F.2d 1290, 1292–1293 (7th Cir.1983), *cert. denied,* 464 U.S. 978, 104 S.Ct. 417, 78 L.Ed.2d 354 (1983), involving a claim for money damages from F.A.A. employees because of an alleged due process violation in the revocation of an airman's certificate. ("This action is in derogation of the well settled principle that collateral attacks upon administrative orders are not permissible.")

▮ Count VII, referred to as the *"Bivens* claim"[5] by plaintiffs and the district court, again refers to the First, Fifth and Eighth Amendments under federal common law, the United Nations Convention and Protocol.... and Florida tort and constitutional law. (See n. 2, *supra*) In this count, plaintiffs alleged that the acts of the individual defendants in detaining and refusing to grant parole to plaintiffs violated their rights "to equal protection, liberty, freedom from institutional harm, freedom from unjustified punishment and the right to procedural due process" under the Fifth Amendment. Plaintiffs further alleged that due to the conditions of detention, defendants subjected plaintiffs to cruel and unusual punishment in violation of the Fifth and Eighth Amendments, and that defendants deprived plaintiffs of First Amendment rights to consult with counsel.

The district court dismissed Count VII upon the finding that defendants were entitled to qualified immunity inasmuch as plaintiffs did not possess at the time of their detention "clearly established constitutional or statutory rights" under the rule of *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

In *Harlow,* a civilian employee of the Air Force sought damages from two presidential advisors upon a claim that they had conspired to have him terminated in violation of his statutory and constitutional rights. While finding that the presidential aides were not entitled to absolute immunity, the *Harlow* court ruled that they were entitled to qualified immunity, judged upon objective standards:

> subject matter against the employee whose act or omission gave rise to the claim or against the estate of such employee. Any other civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee or the employee's estate is precluded without regard to when the act or omission occurred. (Emphasis added) Insofar as *Westfall v. Erwin, supra,* 484 U.S. 292, 108 S.Ct. 580, 98 L.Ed.2d 619, requires a finding of "discretion," that decision has been superseded by the statutory amendment.

**4.** The Federal Employees Liability Reform and Tort Compensation Act of 1988 amended 28 U.S.C.A. § 2679 so that an action against the United States is the *sole* remedy for those injured by negligent and wrongful acts of government employees and all actions against the employees are precluded. § 5 Pub.Law 100–694:

§ 2679. **Exclusiveness of remedy**

\* \* \* \* \* \* \*

(b)(1) The remedy against the United States provided by Sections 1346(b) and 2672 of this title for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government *while acting within the scope of his office or employment is exclusive of any other civil action or proceeding for money damages by reason of the same*

**5.** *Bivens v. Six Unknown Fed. Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). A violation of the Fourth Amendment by a federal agent gives rise to a federal action for damage.

We therefore hold that government officials *performing discretionary functions* generally are shielded from liability for civil damages insofar as their conduct does not violate *clearly established* statutory or constitutional rights of which a reasonable person would have known. (Emphasis supplied)

457 U.S. at 818, 102 S.Ct. at 2738, 73 L.Ed.2d at 410.

We agree with the finding of the district court that in this case there was no violation of such rights.

In *Shaughnessy v. United States, el rel. Mezei*, 345 U.S. 206, 73 S.Ct. 625, 97 L.Ed. 956 (1953), relied upon by the district court, an unadmitted alien was held on Ellis Island for 21 months because no other country would accept him. After four unsuccessful attempts to seek release by habeas corpus, a judge of the Southern District of New York finally sustained a writ. The court of appeals affirmed the alien's release on bond; but on certiorari, the Supreme Court reversed, finding that an excluded alien had no right to release. The Court there explained "an alien on the threshold of initial entry stands on a different footing: 'Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.'" (citing *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544, 70 S.Ct. 309, 313, 94 L.Ed. 317).

Citing a long line of cases, the trial court found that "[i]n the present case, dismissal is especially appropriate when there is no question that plaintiffs, as unadmitted aliens, are entitled to limited constitutional or statutory protection." [6]

Insofar as these particular plaintiffs are concerned, the *en banc* decision of this court in *Jean v. Nelson, supra*, 727 F.2d 957, as affirmed by the Supreme Court, has established that their rights as unadmitted aliens are limited to procedures established at the discretion of the Attorney General.

The discretionary nature of a parole decision has been recognized many times. *Flammia v. United States*, 739 F.2d 202 (5th Cir.1984); *Fernandez–Roque v. Smith*, 734 F.2d 576 (11th Cir.1984); *Perez–Perez v. Hanberry*, 781 F.2d 1477, *supra*, (11th Cir.1986). In *Flammia*, a paroled Cuban refugee shot a Texas police officer who thereafter sued for damages under the Federal Tort Claims Act. The court found that in paroling the Cuban, the INS acted in an area committed to its discretion and it was therefore immune under the discretionary function provisions of the Act. 739 F.2d at 205.

Following the *en banc* decision in *Jean v. Nelson, supra*, 727 F.2d 957, *supra*, this circuit again ruled that the denial of or revocation of the parole of Cuban aliens did not involve a constitutional liberty *interest*. *Fernandez–Roque v. Smith, supra*, 734 F.2d 576 at 582:

Based on *Jean* and *Mezei*,[7] we are compelled to conclude that parole is part of the admissions process. As such, its denial or revocation does not rise to the level of a constitutional infringement. Because the Cubans lack a constitutional liberty interest, we need not reach the question of whether the Attorney General's plan satisfies due process. (footnote omitted)

In *Garcia–Mir v. Meese*, 788 F.2d 1446 (11th Cir.1986), *cert. den.*, *Ferrer–Mazorra v. Meese*, 479 U.S. 889, 107 S.Ct. 289, 93 L.Ed.2d 263 (1986), this circuit ruled that unadmitted Mariel Cuban aliens, who sought parole revocation hearings, had no right to the protection of the Due Process Clause of the constitution, ("the right to such hearings is not resident in the core values of the Due Process Clause *per se* "),

---

**6.** Cases relied on by the trial court included the following citations:

    *Landon v. Plasencia*, 459 U.S. 21, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982); *Leng May Ma v. Barber*, 357 U.S. 185, 78 S.Ct. 1072, 2 L.Ed.2d 1246 (1958); *Kwong Hai Chew v. Colding*, 344 U.S. 590, 73 S.Ct. 472, 97 L.Ed. 576 (1953); *Bridges v. Wixon*, 326 U.S. 135, 65 S.Ct. 1443,

89 L.Ed. 2103 (1945) (Murphy, J., concurring); *Choe Chan Ping v. United States*, ("*The Chinese Exclusion case*"), 130 U.S. 581, 9 S.Ct. 623, 32 L.Ed. 1068 (1889).

    n. 12, Order of Dismissal, p. 11.

**7.** *Shaughnessy v. United States ex rel. Mezei, supra*, 345 U.S. 206, 73 S.Ct. 625, 97 L.Ed. 956.

and that, under the circumstances of the case, they did not even have a "nonconstitutionally based due process liberty interest" in such a hearing. In so ruling, we discussed the limited status of unadmitted aliens:

> At issue here is the difficult question whether there exists some right, based not on the Constitution but derived from some other source, that rises to the level of a due process liberty interest and accordingly merits protection. The question is made more difficult by the fact that, once we enter the rarefied domain of nonconstitutionally-based due process rights, the appellees here are excludable aliens and hence have virtually no constitutional rights in any event.

788 F.2d at 1449

See *Perez–Perez v. Hanberry, supra,* 781 F.2d 1477 at 1481–1482: "It has been firmly established in this Circuit that the obverse of this grant of authority to the Attorney General to parole an excludable alien is the power to deny such parole. *Garcia–Mir,* 766 F.2d at 1484–85; *Jean v. Nelson,* 727 F.2d at 977." See also, *Amanullah v. Nelson,* 811 F.2d 1 (1st Cir.1987), (Afghanistanis who arrived without documents and were denied parole, not entitled to due process relief in habeas corpus).

Plaintiffs here claim that the decision in *Lynch v. Cannatella,* 810 F.2d 1363 (5th Cir.1987), requires that we deny defendants' claim of *Harlow* immunity. There, sixteen stowaway Jamaican aliens were found on a grain barge destined for ports on the Mississippi. They were removed and turned over to the Port of New Orleans Harbor Police where they were allegedly detained in cells without beds, mattresses, pillows or heaters, doused with power hoses and drugged. The court there discussed the nature of *Harlow* immunity but found that the aliens were entitled to be protected from "gross physical abuse," a right "clearly established" at the time of their detention. Under such circumstance, the court remanded the civil rights claims for damages for further inquiry into the alleged abuse.

In so doing, the *Lynch* court specifically found that the Eighth Amendment did not apply:

> The harbor police defendants correctly note that the eighth amendment prohibition against cruel or unusual punishment is not applicable to cases in which the plaintiffs were not in custody as a result of having been convicted of a crime. (Citation omitted)

810 F.2d at 1375

The district court correctly found that the *Lynch* decision does not destroy *Harlow* immunity for the defendants here. There is no allegation of "gross physical abuse" or intentional and malicious infliction of harm by INS agents.

Plaintiffs' allegations concerning the circumstances of detention recite that they were subjected to "severe overcrowding, insufficient nourishment, inadequate medical treatment and other conditions of ill-treatment arising from inadequate facilities and care." (Second Amended Complaint, Count VI, as FTCA claim) In Count VII, the *Bivens* action, the allegation is that they were subjected to "overcrowded and other conditions of ill treatment" constituting cruel and unusual punishment in violation of the Fifth and Eighth Amendments. In Count VIII, the civil rights actions under 42 U.S.C. §§ 1981, 1985(3) and 1986, plaintiffs contend that they were subjected to "unequal punishment, pains and penalties including prolonged incarceration under harsh conditions," and that each "experienced deprivation of liberty, embarrassment, humiliation, disgrace and injury to feelings, loss of consortium, loss of wages and employment, loss of time and physical and mental pain and suffering."

We expect that any type of detention causes humiliation, disgrace and injured feelings, and we will accept the allegation that the conditions of plaintiffs' detention were onerous and perhaps "harsh" or less than ideal. Still, the detention was lawful at all times, and we find no complaint here approaching the "gross" physical abuse outlined in *Lynch.*

It should be noted that subsequent to the *Lynch* decision the Fifth Circuit ruled in

**1560**

*Medina v. O'Neill,* 838 F.2d 800 (5th Cir. 1988), that the INS had no statutory duty to provide "appropriate" detention facilities for excludable alien stowaways. There, Columbian stowaways were found on board a ship which docked in Houston and an INS agent arranged for their detention at a private facility operated by Danner, Inc., a private security firm. During an escape attempt at the Danner facility, one Columbian was shot and killed, another injured; and the aliens sued for damages. In finding there had been no violation of any due process right, the court distinguished the *Lynch* decision in this manner:

> We recently discussed the substantive due process rights of excludable aliens in *Lynch v. Cannatella.* In *Lynch* we could conceive of no national interests that would justify "the malicious infliction of cruel treatment" on an excludable alien. Such an alien is entitled "to be free of gross physical abuse at the hands of state or federal officials" under the due process clause. The stowaways alleged neither that cruel treatment was maliciously inflicted upon them nor that they suffered gross physical abuse. They stated no claim for violation of due process rights. (footnotes omitted)

838 F.2d at 803

See also, *Equan v. U.S. I.N.S.,* 844 F.2d 276 (5th Cir.1988) where a Nigerian overstayed his visa and was held for deportation. He complained that his detention in the Federal Detention Center in Oakdale, Louisiana, violated the Eighth Amendment. The court found the Eighth Amendment inapplicable.

We find that the trial court correctly dismissed Count VII of the *Bivens* claim upon the basis of *Harlow* immunity.

■ In Count VIII of the complaint, plaintiffs claimed the court had jurisdiction under 28 U.S.C.A. § 1343 for alleged violations of the civil rights provisions of 42 U.S.C. §§ 1981, 1985(3) and 1986.

The trial court correctly found that in view of the finding of *Harlow* immunity discussed above, the claims in Count VIII are likewise barred.

The order of the district court dismissing this action is AFFIRMED.