Philip WILTZ, Jr. and His Wife Henrietta Wiltz, Plaintiffs,

v.

MAERSK, INC. et al., Defendants.

No. Civ.A. G–00–032.

United States District Court, S.D. Texas, Galveston Division.

March 21, 2001.

Ronald L White, White Mackillop et al, Houston, TX, for Ron White, mediator.

Stephen M Vaughan, Mandell and Wright, Houston, TX, for Philip Wiltz, Jr, Henrietta Wiltz, plaintiffs.

Mark Cohen, Royston Rayzor Vickery and Williams, Houston, TX, for Maersk Inc., defendant.

Douglas W Lyons, Jr, Kirlin Campbell et al, Houston, TX, for St. Johns Antigua, Courage Shipping Company Ltd, St. Johns, Antigua, defendants.

### ORDER DENYING DEFENDANT MAERSK INC.'S MOTION TO DISMISS OR ALTERNATIVELY MOTION SUMMARY JUDGMENT

KENT, District Judge.

Plaintiffs bring this personal injury action pursuant to the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 905(b). Allegedly, Plaintiff Philip Wiltz, Jr. ("Wiltz") was injured while working as a longshoreman aboard the M/V MAERSK CARACAS on January 24, 1999. Now before the Court is Defendant Maersk, Inc.'s Motion to Dismiss or Motion for Summary Judgment.

## I. BACKGROUND

Plaintiff Wiltz is a longshoreman who was allegedly injured while participating in a stevedoring operation. Wiltz alleges that a ship's mate interfered with his efforts to secure cargo aboard the M/V MAERSK CARACAS. According to Wiltz, the mate was attempting to reach an electrical cable on a cargo container. In so doing, the mate allegedly caused Wiltz to fall and sustain injuries. Now before the Court is Defendant Maersk, Inc.'s ("Maersk") Motion to Dismiss or Motion for Summary Judgment. For the reasons set forth below, Defendant's Motion is **DENIED**.

## II. DISCUSSION

### A. Summary Judgment Standard

Defendant Maersk has attached materials to its Motion to Dismiss or Motion for Summary Judgment. Because the Court has considered these "matters outside the pleadings," it reviews Maersk's Motion as one requesting Summary Judgment. *See* Fed.R.Civ.P. 12(b). Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). When a motion for summary judgment is made, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Issues of material fact are "genuine" only if they require resolution by a trier of fact. *See id.* at 248, 106 S.Ct. at 2510. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *See id.*

at 247–48, 106 S.Ct. at 2510. If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. *See id.; see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Dixon v. State Farm Fire & Cas. Co.,* 799 F.Supp. 691, 693 (S.D.Tex. 1992) (noting that summary judgment is inappropriate if the evidence could lead to different factual findings and conclusions). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *See Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513.

Procedurally, the party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. at 2553; *see also* Fed. R.Civ.P. 56(c). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *See Matsushita,* 475 U.S. at 585–87, 106 S.Ct. at 1355–56; *Wise v. E.I. DuPont de Nemours & Co.,* 58 F.3d 193, 195 (5th Cir.1995). The Court must accept the evidence of the nonmoving party and draw all justifiable inferences in favor of that party. *See Matsushita,* 475 U.S. at 585–87, 106 S.Ct. at 1355–56. However, to meet its burden, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts," but instead, must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 586–87, 106 S.Ct. at 1355–56 (quoting Fed.R.Civ.P. 56(e)).

B. *May a Time Charterer be Liable for Injuries Sustained in Cargo Operations?*

■ Generally, in a time charter, the vessel owner retains possession and control of the vessel while the time charterer tells the vessel where and when to go. *See Walker v. Braus,* 995 F.2d 77, 81 (5th Cir.1993). Broadly speaking, the law has long been that a personal injury plaintiff may hold a time charterer liable for his or her injuries in two principal situations: (1) if the plaintiff's alleged harm was caused by an act within the time charterers' scope of actual or traditional control, or (2) if liability was clearly transferred to the charterer by the charter party agreement. *See Hodgen v. Forest Oil Corp.,* 87 F.3d 1512, 1517–1521 (5th Cir.1996) (outlining the Fifth Circuit's time charter jurisprudence, and characterizing a charterer's liability as "hybrid duty arising from contract and tort ... that the parties may vary ... by contract or custom"); *see also Moore v. Phillips Petroleum Co.,* 912 F.2d 789, 791–92 (5th Cir.1990) (discussing a time charterer's traditional duties); *Woods v. Sammisa Co., Ltd.,* 873 F.2d 842, 856–58 (5th Cir.1989) (finding time charterer liable for its own acts); *Kerr–McGee Corp. v. Ma–Ju Marine Servs., Inc.,* 830 F.2d 1332, 1341–43 (5th Cir.1987) (holding that a time charterers duties are determined by "tradition and agreement"); *Mallard v. Aluminum Co. of Canada, Ltd.,* 634 F.2d 236, 242 n. 5 (5th Cir. Jan.1981) (stating that "this circuit seems reluctant to find any shift of operational responsibility for personal injuries to the time charterer absent clear language to that effect"). In its Motion, Maersk essentially argues that the time charterer cannot be liable for Plaintiff Wiltz's injuries allegedly suffered during cargo operations because: (1) cargo operations do not fall within a time charterer's traditional duties and (2) the Charter Party Agreement had not clearly transferred liability to the charterer for injuries suffered during cargo operations.

1. *Clause 8*

■ In this Circuit, it is well settled that under Clause 8 of the *traditional* New

York Produce Exchange form, time charterers bear only the financial responsibility for cargo operations.[1] *See American Home Assurance Co. v. M/V Sletter*, 43 F.3d 995, 997 (5th Cir.1995); *Woods*, 873 F.2d at 856–57. The Charter Party Agreement in the present action, however, does not include the traditional Clause 8. Instead, the Agreement provides, in relevant part, that:

> Charterers shall perform all cargo and container handling ... at their risk and expense, under the supervision of the Master, who will remain responsible for the vessel's seaworthiness in relation to proper stowage of the vessel.

Under this revised Clause 8, the charterer bears not only the expense, but also the "risk" of cargo and container handling. In this Court's view, revised Clause 8 works a sea change in the law of charter party agreements. If not to shift the risk of injuries, why would the tried and true Clause 8 have ever been so modified? Factual issues clearly exist regarding the meaning of revised Clause 8.

### 2. *Clause 29*

The Charter Party Agreement, in this action, provides that the ship's crew, with the Master's consent, may assist in the lashing of cargo. Clause 29 of the Charter Party Agreement further states, that the ship's "[c]rew members doing such work will be working on behalf of the Charterers and as their servants and shall not have any prejudice to liabilities and responsibilities for this operation." Plaintiff Wiltz alleges that a ship's mate was assisting with cargo operations when the mate allegedly took actions that caused Plaintiff injury. Thus, a reasonable reading of this clause suggests that the charterer may be vicariously liable for the ship's mate allegedly causing Wiltz's injuries.

Because the Court concludes that fact issues exist with respect to the effect of revised Clause 8 and Clause 29, Maersk's Motion to Dismiss or for Summary Judgment is **DENIED**.

### C. *Here is the church ... Here is the steeple ... Open it up and here are the people.*

■ Having concluded that revised Clause 8, and/or Clause 29, potentially implicates the charterer in this personal injury action, the Court must next ascertain who is the charterer. Maersk argues that even if a charterer can be liable under the terms of the present agreement, that Maersk was not the charterer. According to Maersk, A.P. Moller, a non-party to this action, was the charterer, and Maersk was merely A.P. Moller's disclosed agent. Ordinarily, even cursory review of the Charter Party Agreement would clear up this issue. In this case, however, the Charter Party is hopelessly muddled.

The Charter Party Agreement repeatedly states that it was made between Defendant Courage Shipping and "A.P. Moller as Agents for Charterers." For Charterers' whom, the Court must ask? The Agreement fails to state who the charterer was to be. Maersk desires that the Court construe this language to mean "Maersk as Agents for A.P. Moller," but the agreement simply does not say that. Instead, the Agreement states that A.P. Moller was agent, but seemingly an agent without a disclosed principal.

However, the Agreement does go on to provide that Maersk Broker KS, Copenhagen was to receive a commission on the

---

**1.** Traditional Clause 8 provided, in part, that: "Charterers are to load, stow, and trim, and discharge the cargo at their expense under the supervision of the Captain." *American Home Assurance Co.*, 43 F.3d at 995; *Woods*, 873 F.2d at 856.

charter. This perhaps suggests that a Maersk entity was the agent, but again this is not Defendant Maersk, Inc.[2] In yet another confusing ambiguity, the Charter Party Agreement provides that both the charterer and owner will become signatories to the Super Carrier Agreement. A copy of the Super Carrier Agreement is then attached to the Charter Party. This agreement states that it "is made between Maersk Incorporated ... and the United States Customs Service." No one is suggesting that Maersk owned the vessel, and therefore it seems that Maersk must have been signing the Super Carrier Agreement as the charterer—although, the Court supposes that this could be another instance of a failure to clarify the status of who was the agent and who was the principal between Maersk and A.P. Moller.

In sum, the Court cannot ascertain with the requisite level of certitude who has what role in this topsy-turvy set of agreements. Accordingly, Maersk's Motion to Dismiss or Motion for Summary Judgment on the ground that it is not the charterer is **DENIED.**

### III. CONCLUSION

As set forth above, the Court concludes that either revised Clause 8 or Clause 29 seen in the Charter Party Agreement may create liability, on the facts of this case, for the charterer. That begs the question, of course, of who was the charterer. The parties do not agree, and the Court sees why. Accordingly, the Court hereby **ORDERS** that leave is **GRANTED** for Plaintiffs to amend their Complaint in order to bring A.P. Moller, or any other entity discovery may indicate to be the charterer, into this action. Plaintiffs shall have forty-five (45) days from the entry of this Order to so amend if desired. In the meantime, Defendant Maersk's Motion to Dismiss or Motion for Summary Judgment is **DENIED.**

**IT IS SO ORDERED.**

---

2. Perhaps Maersk Broker KS was the agent      for Maersk, Inc.