781 F.2d 1477
 82 A.L.R.Fed. 613
 Cristobal PEREZ-PEREZ, Petitioner-Appellee,
v.
Jack HANBERRY, Warden, et al., Respondents-Appellants.
Aristedes MACHADO-MATOS, Petitioner-Appellee,
v.
Jack HANBERRY, Warden, et al., Respondents-Appellants.
Eduardo CRESPO-GOMEZ, Petitioner-Appellee,
v.
Jack HANBERRY, Warden, et al., Respondents-Appellants.
Cristobal PEREZ-PEREZ, Petitioner-Appellee,
v.
Jack HANBERRY, Warden, et al., Respondents-Appellants.
Cristobal PEREZ-PEREZ, Petitioner-Appellee,
v.
Jack HANBERRY, Warden, et al., Respondents-Appellants.
 Nos. 85-8552, 85-8648, 85-8651, 85-8770, 85-8649, 85-8652,
85-8772, 85-8650 and 85-8771.
 United States Court of Appeals,
Eleventh Circuit.
 Jan. 27, 1986.
 
 Nina R. Hickson, Asst. U.S. Atty., Barbara V. Tinsley, Sharon D. Stokes, Atlanta, Ga., Lauri S. Filppu, David J. Kline, U.S. Dept. of Justice, Washington D.C., for respondents-appellants.
 Jay I. Solomon, court appointed, Atlanta, Ga., for Perez-Perez and Crespo-Gomez.
 William C. Thompson, Atlanta, Ga., for Perez-Perez.
 David Webster, Atlanta, Ga., for Machado-Matos.
 Appeals from the United States District Court for the Northern District of Georgia.
 Before VANCE and HENDERSON, Circuit Judges, and LYNNE*, Senior District Judge.
 VANCE, Circuit Judge:
 
 
 1
 The appellees, Cristobal Perez-Perez, Aristedes Machado-Matos, and Eduardo Crespo-Gomez, are Cuban detainees who along with more than 1,000 other excludable aliens have filed individual petitions for habeas corpus review of the Attorney General's refusal to parole them from the Atlanta Federal Penitentiary. After determining that all of the detainees were entitled to appointed counsel, the district court selected the three appellees' cases as test cases and certified an interlocutory appeal under 28 U.S.C. Sec. 1292(b) for resolution of the following controlling question of law:
 
 
 2
 Whether counsel may be appointed and compensated pursuant to 18 U.S.C. Sec. 3006A(g) in a habeas corpus action brought by an excludable alien challenging the Attorney General's refusal to parole him.
 
 
 3
 We accepted the appeal, and now reverse.[1] We find that the Criminal Justice Act ("CJA"), 18 U.S.C. Sec. 3006A, does not authorize the appointment and compensation of counsel in a habeas corpus action brought by an excludable alien challenging the Attorney General's refusal to parole him. Even if the CJA did apply here we would still be compelled to reverse because (1) the petitioners had not exhausted their administrative remedies at the time they filed their habeas corpus petitions, thus depriving the district court of jurisdiction, and (2) no substantive issue warranting the appointment of counsel exists.
 
 I.
 
 4
 We note at the outset that the district court has once again[2] failed to recognize the structure of immigration policy in this country. The world is not entitled to enter the United States as a matter of right. As we have stated previously, excludable aliens are those who seek admission into the United States but have not achieved entry. Jean v. Nelson, 727 F.2d 957, 968 (11th Cir.1984) (en banc), aff'd, --- U.S. ----, 105 S.Ct. 2992, 86 L.Ed.2d 664 (1985). These aliens "have no constitutional rights with regard to their applications and must be content to accept whatever statutory rights and privileges they are granted by Congress." Id. Parole decisions are deemed an integral part of the admissions process, and excludable aliens consequently cannot challenge parole decisions as a matter of constitutional right. Fernandez-Roque v. Smith, 734 F.2d 576, 582 (11th Cir.1984); Jean v. Nelson, 727 F.2d at 963, 972. This country's immigration policy vests the authority to determine the rights of excludable aliens in the political branches of our government, not the courts. Garcia-Mir v. Smith, 766 F.2d 1478, 1484 (11th Cir.1985). Because our immigration policy "weighs the nation's interest in self-determination so much more heavily than it does the alien's interest in entering, the courts--which are at times inclined to place limits on government discretion where important individual interests are at issue--should ordinarily abstain where excludable aliens are concerned." Id.
 
 
 5
 In this case, therefore, there must have been statutory authority for the district court to appoint counsel for these excludable aliens. The district court and the appellees assert that this authority can be found in the Criminal Justice Act, specifically in 18 U.S.C. Sec. 3006A(g). After examining the CJA and this subsection in particular, we find that it clearly does not authorize the appointment of counsel at government expense for excludable aliens seeking parole. Section 3006A(g) provides in relevant part:
 
 
 6
 Any person ... seeking [habeas corpus] relief ... may be furnished representation pursuant to the plan whenever the United States magistrate or the court determines that the interests of justice so require and such person is financially unable to obtain representation.
 
 
 7
 The "plan" referred to in this subsection is the district court plan for furnishing representation described in section 3006A(a). That subsection states in part that "[e]ach United States district court ... shall place in operation ... a plan for furnishing representation for any person financially unable to obtain adequate representation ... (3) who is ... seeking collateral relief, as provided in subsection (g)...." 18 U.S.C. Sec. 3006A(a) (emphasis added). These subsections do not provide for the appointment of counsel for excludable aliens challenging the denial of parole through habeas corpus petitions because these challenges are not collateral in nature. Although habeas corpus is more often used as a method of seeking collateral relief, these excludable aliens are in reality seeking direct judicial review of the denial of parole in an administrative immigration proceeding. A habeas corpus challenge to a criminal conviction after the defendant's right to direct appeal had been exchausted, on the other hand, would be a truly collateral attack and hence covered by the statute. Because of this distinction, the statute on its face does not authorize the appointment of counsel for these aliens' direct challenge of the administrative denial of parole.
 
 
 8
 Further support for the inapplicability of the statute in this context can be found in the legislative history accompanying the CJA amendment which added the provision providing for the appointment of counsel at government expense in some habeas corpus proceedings.[3] The legislative history makes it clear that the statute and its amendment provide for the appointment of counsel in criminal proceedings or in those proceedings "intimately related to the criminal process."[4] Unlike a habeas corpus challenge to a criminal conviction, which is civil only in a technical sense, a direct challenge to a parole denial in an administrative immigration proceeding is truly civil in nature and is not the type of criminal context in which this statute operates.
 
 
 9
 We note also that the appointment of counsel at government expense for these excludable aliens would conflict with this country's immigration policy. Section 292 of the Immigration and Nationality Act provides that
 
 
 10
 [i]n any exclusion or deportation proceedings before a special inquiry officer and in any appeal proceedings before the Attorney General from any such exclusion or deportation proceedings, the person concerned shall have the privilege of being represented (at no expense to the Government ) by such counsel ... as he shall choose.
 
 
 11
 8 U.S.C. Sec. 1362 (emphasis added). It is unlikely that Congress would provide that excludable aliens should not be furnished with counsel at government expense in administrative proceedings concerning their admission into this country, yet also intend that counsel be provided for such aliens in judicial proceedings such as challenges to the denial of parole which are part of the admissions process.
 
 II.
 
 12
 Even if we were to find the Criminal Justice Act applicable here, we would be compelled to reverse because the district court lacked jurisdiction due to the appellees' failure to exhaust their administrative remedies. Parole determinations are made pursuant to the statutory and regulatory procedures set out in section 212(d)(5)(A) of the Immigration and Nationality Act, 8 U.S.C. Sec. 1182(d)(5)(A), and in 8 C.F.R. Sec. 212.5. We thought we had made it clear in another context that cases such as those before us here are ripe for dismissal unless administrative remedies had been exhausted before the cases were brought to the district court.[5] See Garcia-Mir, 766 F.2d at 1483 n. 6, 1486 n. 8, 1489, 1492. In Garcia-Mir we indicated that because only two of the habeas corpus petitioners in that case had properly filed and exhausted individual motions to reopen their exclusion hearings, the district court had no subject matter jurisdiction over any of the petitioners except those two. Id. at 1492. In this case appellees did not allege exhaustion of administrative remedies. In fact, the government has stated without dispute that none of the excludable aliens, including appellees, had properly exhausted his administrative remedies at the time he filed his habeas corpus petition. The district court therefore lacked jurisdiction to consider appellees' petitions and should have dismissed them for failure to exhaust administrative remedies.
 
 III.
 
 13
 Finally, we emphasize that even if the district court's decision were not flawed by an incorrect interpretation of statutory authority or a lack of jurisdiction, we would find further reason for reversal in that no substantive issue warranting appointment of counsel for these excludable aliens exists. As we have stated previously, "[j]udicial review of denials of discretionary relief incident to deportation proceedings ... is limited to determining whether there has been an exercise of administrative discretion, and whether the manner of exercise has been arbitrary or capricious." Crespo-Gomez v. Richard, 780 F.2d 932, 934 (11th Cir. 1986) (citing Garcia-Mir, 766 F.2d at 1490). Congress has granted the Attorney General broad discretion in the context of parole of excludable aliens. Section 1182(d)(5)(A) of the Immigration and Nationality Act provides as follows:
 
 
 14
 The Attorney General may, except as provided in subparagraph (B), in his discretion parole into the United States temporarily under such conditions as he may prescribe for emergent reasons or for reasons deemed strictly in the public interest any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Attorney General, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.
 
 
 15
 8 U.S.C. Sec. 1182(d)(5)(A). It has been firmly established in this circuit that the obverse of this grant of authority to the Attorney General to parole an excludable alien is the power to deny such parole. Garcia-Mir, 766 F.2d at 1484-85; Jean v. Nelson, 727 F.2d at 977. In other words, the Attorney General is under no obligation to parole excludable aliens--he may do so in his discretion. We also have determined a particularized standard of review for the Attorney General's parole decisions. In reviewing such decisions a federal court need only determine whether the Attorney General has advanced "a facially legitimate and bona fide reason" for his decision. Jean v. Nelson, 727 F.2d at 977; see also Garcia-Mir, 766 F.2d at 1485. The petitions at issue in this case show facially legitimate and bona fide reasons for the denial of parole on their face--indeed, the petitioners themselves note their past criminal convictions in their petitions.[6] Certainly the appointment of counsel at government expense for these excludable aliens challenging the Attorney General's refusal to parole them is unnecessary and unwarranted when the Attorney General's denial of parole is supported on the face of the petition by a bona fide reason for such denial.
 
 IV.
 
 16
 In summary, we reverse the district court's judgment for three reasons. First, the Criminal Justice Act does not authorize the appointment of counsel at government expense for excludable aliens challenging the denial of parole. Second, appellees failed to exhaust their administrative remedies prior to the filing of their petitions. Third, given the broad discretion of the Attorney General in this area and the limited scope of review for federal courts no substantive issue warranting the appointment of counsel exists. We view the district court's extreme step in appointing counsel at government expense for more than 1,000 individuals as inexplicable in light of the total absence of authority supporting such an action, the prior opinions of this court, and the overwhelming indications from the political branches that these appointments would run contrary to the established immigration policy in this country.
 
 
 17
 REVERSED.
 
 
 
 *
 Honorable Seybourn H. Lynne, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation
 
 
 [1]
 The full procedural history of these cases is somewhat complex. On June 26, 1985, the court issued show cause orders, directed the government to respond and to produce the complete administrative record relating to each petitioner, and authorized the appointment of counsel under 18 U.S.C. Sec. 3006A to represent each of the petitioners. The government filed a notice of appeal from each order. Nos. 85-8552, 85-8648, and 85-8649. The government then filed objections to the appointment of counsel and moved to stay all proceedings pending a decision on appeal as to whether counsel could properly be appointed and compensated under 18 U.S.C. Sec. 3006A. After the appellees' cases were selected as test cases, the district court in an order of August 15, 1985 found that counsel should be appointed in these actions and appointed counsel for each of the three petitioners. The court also granted the government's motion to stay and certified its August 15 order for interlocutory appeal
 The government filed a second notice of appeal from this order. Nos. 85-8650, 85-8652. It also filed petitions for permission to appeal the order under Sec. 1292(b). This court granted those petitions, Nos. 85-8770, 85-8771, and 85-8772, and later consolidated these Sec. 1292(b) appeals with the previous six appeals. The government also petitioned for writs of mandamus or prohibition under 28 U.S.C. Sec. 1651.
 
 
 [2]
 See, e.g., Garcia-Mir v. Smith, 766 F.2d 1478 (11th Cir.1985), rev'g Fernandez-Roque v. Smith, 600 F.Supp. 1500 (N.D.Ga.1985) and Fernandez-Roque v. Smith, 599 F.Supp. 1103 (N.D.Ga.1984)
 
 
 [3]
 The amendment itself is entitled "An Act to amend section 3006A of title 18, United States Code, relating to representation of defendants who are financially unable to obtain an adequate defense in criminal cases in the courts of the United States." Act of Oct. 14, 1970, Pub.L. No. 91-447, 84 Stat. 916 (1970), reprinted in 1970 U.S.Code Cong. & Ad.News 1064 (emphasis added)
 
 
 [4]
 Pertinent provisions of the legislative history provide as follows:
 Section 1(a)(3) requires that each plan provide for the appointment of counsel, pursuant to the provisions of section 1(g), for individuals financially unable to secure adequate representation who are subject to revocation of parole, who are material witnesses in custody, or who are seeking collateral relief. Inasmuch as these proceedings have traditionally been regarded as technically civil in nature rather than criminal, no right to appointed counsel has as yet been recognized under the sixth amendment. The distinction between civil and criminal matters, however, has become increasingly obscure where deprivation of personal liberty is involved.... The proceedings listed in subsection 1(a)(3) and 1(g) are intimately related to the criminal process.
 H.R.Rep. No. 1546, 91st Cong., 2d Sess. (1970), reprinted in 1970 U.S.Code Cong. & Ad.News 3982, 3987-88 (emphasis added).
 [S]ection 1(g) provides for compensation of counsel appointed for persons seeking collateral relief under section [ ] 2241 ... where the interests of justice so require and the person is financially unable to obtain representation. Section 2241 of title 28 provides for habeas corpus for Federal prisoners convicted in Federal courts....
 H.R.Rep. No. 1546, 91st Cong., 2d Sess. (1970), reprinted in 1970 U.S.Code Cong. & Ad.News 3982, 3992.
 
 
 [5]
 Pursuit of administrative remedies under the Attorney General's Status Review Plan for parole determinations is irrelevant to this appeal because the Status Review Plan was abolished on February 12, 1985
 
 
 [6]
 Each of the three appellees identified the following in his habeas corpus petition as the reason for his detention:
 The Attorney General is detaining me based on a crime I was convicted of in the U.S., but for which I already served my entire sentence and/or was given probation or parole.
 Crespo-Gomez noted an unspecified offense in his petition for which he was sentenced to one year of imprisonment and four years of probation. Machado-Matos' petition noted an unspecified offense for which he served time in Florida and also noted various prison infractions. Machado-Matos further stated in his petition that if released on parole he would have to return to Florida to complete a twelve year prison sentence. Perez-Perez indicated in his petition that he had served time for battery, had been arrested for possession of drugs but subsequently released due to lack of evidence, and had violated his previous INS parole.