**Alberto SALDINA**

v.

**Richard THORNBURGH.**

**Florencio URRA**

v.

**C.A. TURNER.**

**Civ. Nos. B–90–377(WWE), B–90–551(WWE).**

United States District Court, D. Connecticut.

Aug. 27, 1991.

Alberto Saldina–Castillo, pro se.

Richard A. Reeve, Federal Public Defender's Office, New Haven, Conn., for plaintiffs.

Nancy L. Griffin, Asst. U.S. Atty., New Haven, Conn., David M. McConnell, Emily Anne Radford, Civil Div., Office of Immigration Litigation, U.S. Dept. of Justice, Washington, D.C., for defendants.

## RULING ON RESPONDENT'S MOTION FOR CLARIFICATION OR RECONSIDERATION

EGINTON, District Judge.

Petitioners are alleged "Mariel" Cuban detainees challenging the legality of their prolonged custody as excludable aliens. This court ordered the consolidation of these cases and appointed the Federal Public Defender as counsel for the petitioners. Respondents filed the instant motion for reconsideration of this court's order appointing counsel. For the reasons stated below, respondents' motion for reconsideration is granted and upon reconsideration, the court's order of February 8, 1991 will be affirmed.

The Government presents the following three grounds in support of its motion: 1) the Criminal Justice Act (CJA or Act), 18 U.S.C. § 3006A, does not provide counsel in civil immigration proceedings; 2) the appointment of counsel conflicts with the Immigration and Nationality Act (INA); and, 3) appointment of counsel at government expense is not warranted in these cases. Petitioners, through their appointed counsel, object to respondents' motion.

### Discussion

Section 3006A(a)(2) of the CJA, as amended, states the following:

"Whenever the United States magistrate or the court determines that the interest of justice so requires, representation may be provided for any financially eligible person who— ... (B) is seeking relief under section 2241, 2254, 2255 of title 28."

The clear construction of this statute is that any indigent person seeking habeas corpus relief under the provisions of Title 28 is entitled to CJA representation when the interest of justice so requires. This statute is not ambiguous, vague, or confusing. Petitioners are seeking relief under 28 U.S.C. § 2241 and fall within the plain meaning of the language of this statute. Section 2241 provides relief for prisoners in custody of the authority of the United States "in violation of the Constitution or laws or treaties of the United States." *See* 28 U.S.C. § 2241(c). This remedy has never been viewed as available only to challenge criminal convictions. The canon of statutory construction is that Congress is presumed to understand the judicial background against which it legislates. *Cannon v. University of Chicago*, 441 U.S. 677, 696–97, 99 S.Ct. 1946, 1957–58, 60 L.Ed.2d 560 (1979).

Respondents do not dispute that petitioners' claims are actionable under § 2241. Nor do they argue that § 2241 relief is available only to challenge criminal convictions. Instead, they maintain that 18 U.S.C. § 3006A is narrower in scope than the habeas corpus statutes and applies only to criminal proceedings or actions arising

directly or collaterally from such proceedings. According to the Government, "purely civil" matters such as immigration proceedings, are not embraced by the Act. In support of this interpretation the Government relies on *Perez–Perez v. Hanberry*, 781 F.2d 1477 (11th Cir.1986) (*Perez* ).[1] The *Perez* court relied on essentially the same three grounds raised herein to reverse a district court's appointment of counsel under § 3006A(a) for a Mariel Cuban detainee. Although 18 U.S.C. § 3006A(a) has been amended since *Perez*, respondents maintain that the amendment does not extend coverage of the Act to civil proceedings and does not affect the analysis of the *Perez* court. This court disagrees and declines to follow the Eleventh Circuit's narrow reading of § 3006A(a).

At the time *Perez* was decided, § 3006A(a) provided in pertinent part:

> (a) **Choice of Plan.**—Each United States district court, with the approval of the judicial council of the circuit, shall place in operation throughout the district a plan for furnishing representation for any person financially unable to obtain adequate representation ... (3) who is subject to revocation of parole, in custody as a material witness, or seeking collateral relief, as provided in subsection (g) ...

Subsection (g) provided as follows:

> (g) **Discretionary appointments.**—Any person subject to revocation of parole, in custody as a material witness, or seeking relief under section 2241, 2254, or 2255 of title 28 may be furnished representation pursuant to the plan whenever the United States magistrate or the court determines that the interests of justice so require and such person is financially unable to obtain representation.

The *Perez* court found that habeas proceedings brought by excludable aliens are not within the scope of the CJA because they are not *collateral* within the meaning of the Act. Instead, the court characterized them as *direct* attacks on the denial of parole in an administrative proceeding. The court then defined a "truly collateral attack" as a habeas corpus challenge to a criminal conviction after the defendant's right to direct appeal is exhausted. Neither respondents nor the *Perez* court provide authority for this restrictive interpretation of the word "collateral."

The *Perez* court's construction of § 3006A(a) is problematic on several levels. First, it relies heavily on a narrow definition of a term that is no longer in the statute. The *Perez* court relied specifically on the word "collateral" when determining whether challenges by Cuban nationals came under the scope of the Act. The court quoted § 3006A(a), supplying emphasis to the word "collateral," and concluded that "[t]hese subsections do not provide for the appointment of counsel for excludable aliens challenging the denial of parole through habeas corpus petitions because these challenges are not *collateral* in nature." *Perez*, 781 F.2d at 1480 (emphasis in original). Clearly, the Eleventh Circuit's analysis of § 3006A(a) rested in large part on its interpretation of the term "collateral." Thus, contrary to the Government's assertion, the removal of this term does suggest a change in the analysis employed by the Eleventh Circuit and logically restricts application of *Perez* to cases brought under the amended CJA.

Additionally, the *Perez* court looked to the legislative history of the Act in order to interpret the proper scope of the CJA. Quoting from the legislative history of the 1970 amendment, the *Perez* court stated that the authority to appoint counsel is provided in criminal proceedings or in those proceedings "intimately related to the criminal process." [2] Once again, the *Perez*

---

1. To the court's knowledge, *Perez* is the only published decision holding that the authority to appoint counsel in this type of case is lacking under the CJA. At least one other district court denied a similar challenge by the Government in a case involving Mariel Cuban detainees. *See Barro–Morales v. Thornburgh,* Civil Action No.

90–422, Memorandum Opinion And Order (E.D.Ky. February 11, 1991).

2. The *Perez* court quotes the following provision of legislative history:

> Section 1(a)(3) requires that each plan provide for the appointment of counsel, pursuant to the provisions of section 1(g), for individu-

court's singular reliance on a sentence fragment results in an overly restrictive interpretation. An equally plausible reading of this passage of legislative history is that Congress decided to provide court appointed counsel in certain civil proceedings which involve "the deprivation of personal liberty." Thus, even though such proceedings are civil in nature and do not invoke sixth amendment rights to counsel, appointment of counsel is appropriate due to the loss of an important fundamental interest.

The *Perez* court apparently understands "deprivation of liberty" to mean only the loss incurred after a criminal conviction has been entered. The legislative history of § 3006A(a) does not support this conclusion. Immediately preceding the sentence relied on by *Perez*, the legislative history cites two cases: *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) (Gault) and *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969) (Johnson).[3] Neither case involved the appointment of counsel to challenge a criminal conviction. In *Gault*, a juvenile filed a habeas corpus petition challenging his confinement in a state industrial school. The Court noted the limited panoply of rights afforded juveniles and the civil nature of delinquency hearings. It nevertheless held that counsel should have been appointed at the hearing due to the consequences of the proceeding, that is, the "commitment to an institution in which the juvenile's freedom is curtailed." *Gault*, 387 U.S. at 14, 87 S.Ct. at 1436–37. *Johnson* discussed the importance of providing legal assistance to prisoners who are attempting to file federal habeas corpus actions. The Court framed this problem as involving "access to the courts," and held that the State must permit fellow inmates to assist each other or provide trained assistance to prisoners in order to protect their "access to the constitutionally and statutorily protected availability of the writ of habeas corpus." *Johnson*, 393 U.S. at 489, 89 S.Ct. at 750–51. Both cases recognized the need to assist individuals facing a loss of liberty even where the loss was not necessarily the result of a criminal proceeding. By citing these cases, Congress recognized the breadth of situations which might require court appointed counsel. The broad remedy of habeas corpus was therefore included in the CJA so that district judges would have the flexibility needed to appoint counsel in cases similar to *Gault* and *Johnson*.

The court does not imply that the 1986 amendment represents a substantive change or in any way broadens the scope of the CJA. As the Government points out, § 3006A(a) was restructured for "purposes of clarity only." Possibly, Congress felt it necessary to clarify any conflicting interpretations of the phrase "collateral relief." By removing the phrase without substituting language restricting the appointment of counsel in habeas proceedings, one might infer that the *Perez* interpretation was not the victorious version. Alternatively, it is possible that the amendment was purely technical in nature, in which case, Congress, in direct contrast to the *Perez* court's analysis, obviously placed little or no significance on the phrase "collateral relief." Either way, the court finds that the amendment does not alter the application of the Act. It is more the case that the *Perez* interpretation was never in line with the original intent of the statute.

Aside from *Perez*, the Government insists that petitioners' detention simply "does not implicate the constitutional or statutory rights the CJA seeks to protect."

---

als financially unable to secure adequate representation who are subject to revocation of parole, who are material witnesses in custody, or who are seeking collateral relief. Inasmuch as these proceedings have traditionally been regarded as technically civil in nature rather than criminal, no right to appointed counsel has as yet been recognized under the sixth amendment. The distinction between civil and criminal matters, however, has become increasingly obscure where deprivation of personal liberty is involved ... The proceedings listed in subsection 1(a)(3) and 1(g) are intimately related to the criminal process. *Perez*, 781 F.2d at 1480 n. 4, *quoting*, H.R.Rep. No. 1546, 91st Cong., 2d Sess. (1970), *reprinted in* 1970 U.S.Code Cong. & Ad.News 3982, 3987–88.

**3.** The citation to these two cases was omitted from the passage of legislative history reproduced in the *Perez* ruling.

These rights are identified by the Government as the right to counsel when the Sixth Amendment requires appointment of counsel, or the right to counsel when any Federal law requires the appointment of counsel in a case involving the loss of liberty. In respondents' view, petitioners are not entitled to these rights because they are not facing a "loss of liberty" within the meaning of the Act. This remarkable conclusion is reached based on the administrative nature of petitioners' detention and the fact that discretionary parole is a privilege, not an enforceable liberty interest.

The court finds this argument to be utterly specious. Petitioners are seeking freedom from confinement; they are not seeking the "privilege" of being placed on parole. To that extent, they have the same enforceable interest in life, liberty and property as any citizen of the United States. *Yick Wo v. Hopkins*, 118 U.S. 356, 369, 6 S.Ct. 1064, 1070, 30 L.Ed. 220 (1886); *Wong Wing v. United States*, 163 U.S. 228, 238, 16 S.Ct. 977, 981, 41 L.Ed. 140 (1896). While petitioners' detention is technically administrative and their confinement in federal prisons may be a matter of convenience rather than punishment, it is also true that even administrative detention becomes "imprisonment" over a period of time. *Rodriguez–Fernandez v. Wilkinson*, 654 F.2d 1382, 1386 (10th Cir.1981), *quoting Petition of Brooks*, 5 F.2d 238 (D.Mass.1925). *See also, Doherty v. Thornburgh*, 750 F.Supp. 131, 137 (S.D.N.Y.1990) ("If at some point detention ceases to serve the Government's legitimate regulatory purpose, continued detention becomes punitive and unconstitutional."). Thus, the scope of the great writ cannot be narrowed by the Government's disingenuous attempt to redefine "liberty." Petitioners' continued and indefinite confinement is clearly a loss of liberty within the meaning of the CJA.

The Supreme Court has described habeas corpus as "perhaps the most important writ known to the constitutional law of England, affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400, 83 S.Ct. 822, 828, 9 L.Ed.2d 837 (1963), *overruled on other grounds, Coleman v. Thompson*, —— U.S. ——, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). The Court described the essence of habeas corpus as "an attack by a person in custody upon the legality of that custody." *Preiser v. Rodriquez*, 411 U.S. 475, 484, 93 S.Ct. 1827, 1833, 36 L.Ed.2d 439 (1973). That custody may be judicially imposed or not. It may be the result of an Executive order, an order of the court, or even the act of private parties. The notion of the "great writ" as a means to challenge illegal confinement has been an integral part of our commonlaw heritage at least since the American Colonies achieved independence. *Id.* at 484–85, 93 S.Ct. at 1833–34. Likewise, the availability of habeas review in immigration cases is equally well established. *See e.g., Chin Yow v. United States*, 208 U.S. 8, 28 S.Ct. 201, 52 L.Ed. 369 (1908); *Bertrand v. Sava*, 684 F.2d 204, 210 (2d Cir.1982). Where, as here, petitioners are attempting to avail themselves of the broad remedy provided by the great writ, their status as administrative detainees is irrelevant.

■ The Government argues in the alternative that appointment of CJA counsel is in direct conflict with the INA § 292, 8 U.S.C. § 1362. This section permits attorney representation of aliens at exclusion or deportation proceedings so long as counsel is not provided at government expense. Respondents hypothesize that it is unlikely Congress would deny government-paid counsel at administrative hearings but then pay for such representation at habeas corpus proceedings. The Government maintains that Congress would have noted a "profound fiscal impact" where potentially tens of thousands of aliens could be effected.

Juxtaposing § 3006A(a) and § 1362 presents no inconsistency when one considers the discretionary nature of the court's ability to appoint counsel in habeas proceedings. In this circuit, appointment is not made without consideration of the merits of the case, the complexity of the legal issues raised, and the ability of the petitioner to investigate and present the case.

*Shaird v. Scully,* 610 F.Supp. 442, 444 (S.D.N.Y.1985). Because petitioners have no right to counsel in these cases, there is no cause for speculation as to the calamitous results which might occur if all aliens were to receive CJA counsel.[4]

Moreover, this alleged inconsistency is not as unlikely as respondents contend. In many instances, complainants have the right to counsel, at their own expense, at administrative proceedings, and may also pursue legal actions where counsel may be statutorily reimbursed by the Government. As an example, individuals seeking social security benefits have a right to counsel when appearing before an administrative law judge. *See* 42 U.S.C. § 406. A lawyer or counsel is considered helpful at such hearings, but they are not required or necessary because administrative hearings are non-adversarial proceedings. When judicial review is sought, an indigent complainant may request *pro bono* counsel under 28 U.S.C. § 1915(d). Any such appointment is made at the discretion of the court. If counsel is appointed and is successful, attorneys fees may be awarded under the Equal Access to Justice Act; 28 U.S.C. § 2412(d). *Wells v. Bowen,* 855 F.2d 37 (2d Cir.1988). This statutory scheme also denies government-paid counsel at the administrative level while providing payment from the public treasury for an attorney at the judicial level. Apparently, this is an inconsistency which Congress is willing to tolerate.

█ Lastly, respondents maintain that the appointment of counsel is not warranted in these cases. The Government concludes that the ultimate issue raised in these cases is no different from the claims of other Cuban detainees who have been denied relief in a number of circuits. In support of this claim, respondents cite recent decisions from other circuits which denied identical versions of the petition submitted by Petitioner Alberto Saldina. Without further reference to the facts of petitioners' cases, respondents conclude

that the Attorney General advanced a facially legitimate and bona fide reason to deny parole to both petitioners.

The present record does not provide a sufficient basis upon which to determine the merits of these claims. While the issues raised in these "fill-in-the-blank" petitions may have been previously decided in other circuits, they have not been reviewed by this circuit. Moreover, the circuits are not in agreement as to the constitutionality of indefinite imprisonment. *Cf., Perez,* 781 F.2d 1477 (11th Cir.1986) and *Rodriguez–Fernandez v. Wilkinson,* 654 F.2d 1382 (10th Cir.1981).

More than likely, petitioners' "form petitions" do not allege adequately the appropriate legal or factual bases for challenging their continued and indefinite detention. Further investigation by petitioners' counsel may very well necessitate amending the petitions. The cases cited by respondent involved petitioners who filed form petitions and attempted to litigate their actions *pro se.* Under these circumstances, it is hardly noteworthy that the photocopied petitions were uniformly rejected. The issues raised in these cases involve complicated questions of law and fact and require legal expertise. The very fact that the petitioners in the cases cited by respondents submitted form petitions and acted *pro se* suggests to this court that their legal challenges may not have been fully explored or advocated. Because the interest of justice requires the appointment of counsel in these cases, the court's order appointing counsel under the CJA shall stand.

### Conclusion

Respondents' request for an order appointing *pro bono* counsel in this matter is DENIED. Respondents are directed to report to the court concerning the status of the petitioners and the results of any recent personal interviews conducted by the Immigration and Naturalization Service with respect to both petitioners. Counsel for petitioners is directed to file any

---

4. There is no indication that financially ruinous consequences have materialized in the Eastern District of Kentucky or the Southern District of Missouri where CJA counsel have been appointed to represent Mariel Cuban detainees.

amended petition on or before September 13, 1991.

SO ORDERED.