Jean Camille Chamblin v. INS          CV-98-97-JD    02/28/00 P

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**


Jean Camille Chamblin,
a/k/a John Chamblin

   v.                                                Civil No. 98-97-JD
                                                    Opinion No. 2000DNH047
Immigration and Naturalization Service


**REPORT AND RECOMMENDATION**

Before me for a Report and Recommendation is the motion for attorney's fees in excess of the statutory limit set forth in the Criminal Justice Act ("CJA"), 18 U.S.C. § 3006A(d)(2), filed by petitioner's appointed counsel. Counsel requests payment of $10,682.93 (consisting of $9,364.50 in fees plus $1,318.43 in costs) for representing petitioner, an Immigration and Naturalization Service ("INS") detainee, in his successful habeas corpus petition under 28 U.S.C. § 2241. The INS contends that the CJA does not authorize the appointment of counsel for an INS detainee, and that the amount requested is excessive.

For the reasons set forth below, I recommend granting the motion and awarding fees and costs under the CJA in the total amount requested.

**Background**

Petitioner, Jean Camille Chamblin, was an INS detainee who

has since been released.  While detained, Chamblin applied for an administrative waiver of deportability under former section 212(c) of the Immigration and Naturalization Act, 8 U.S.C. § 1182(c) (1988).  An Immigration Judge denied the application, and the Board of Immigration Appeals ("BIA") affirmed.

Thereafter, Chamblin filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, seeking a remand of his 212(c) application to the BIA, citing Goncalves v. Reno, 144 F.3d 110 (1st Cir. 1998), cert. denied, 119 S. Ct. 1140 (1999).  Chamblin also requested release from federal detention pending the outcome of the remand.

In a motion filed on September 1, 1998, Chamblin moved for the appointment of counsel (document no. 11) to assist him in litigating his petition.  On September 28, 1998, I granted the motion and expressly cited the CJA as authority for the appointment.  See Order (document no. 23).

Chamblin's habeas corpus petition was ultimately successful. Following extensive briefing over the course of a year, intervening action by the Supreme Court on a petition for certiorari in Goncalves and on related matters, and my issuance of a Report and Recommendation (document no. 38) recommending

that the petition be granted, Chamblin's fortune changed. The BIA reconsidered the 212(c) waiver petition and remanded the matter to an Immigration Judge, and the INS modified its interpretation of 8 U.S.C. § 1226, which it had previously argued precluded the possibility of release pending deportation in Chamblin's case. Chamblin received a bail hearing before an Immigration Judge and was released from INS custody. These events mooted the petition. The district court dismissed the petition upon the Government's motion.

## Discussion

### A.   CJA Appointment

The Government, at this late stage in the case, contends that the CJA did not authorize the appointment of counsel for Chamblin, since he was an INS detainee, and not a prisoner or a criminal defendant. <u>See</u> Respondent's Opposition to Appointment of Counsel at 2 (document no. 49).

It is troubling that the Government has filed its opposition to the CJA appointment so late in the case without any explanation for the timing. Petitioner's counsel has incurred substantial fees and costs since my September 1998 order of appointment. Since the burden of proof necessary to estop the

3

Government is high and unmet here, I will address the Government's arguments on the merits.

The plain language of the CJA does not support the Government's position. The CJA expressly authorizes the appointment of counsel for indigent persons petitioning for writ of habeas corpus under 28 U.S.C. § 2241. It does not contain the caveat that the Government argues is implicit, limiting its application to "persons in the criminal justice system or persons who are prisoners, serving sentences because of criminal convictions," Respondent's Opposition to Appointment of Counsel (document no. 49) at 2. The statute provides as follows, in pertinent part:

> Whenever the United States magistrate or the court determines that the interests of justice so require, representation may be provided for any financially eligible person who –
>
> (A) . . .
>
> (B) is seeking relief under section 2241, 2254, or 2255 of title 28.

18 U.S.C. § 3006A(a)(2)(B) (Supp. 1999). Chamblin demonstrated his financial eligibility and filed his petition pursuant to section 2241, and I previously found that the interests of justice required an appointment in this case.

4

Relying on <u>Perez-Perez v. Hanberry</u>, 781 F.2d 1477 (11th Cir. 1986), and citing a First Circuit decision that provides no meaningful guidance on the issue,[1] the Government's rejoinder is that the CJA, 18 U.S.C. § 3006A(a)(2)(B), does not cover every indigent petitioner seeking relief under section 2241. When construed in light of its title, context, and legislative history, according to the Government, the CJA provision covers only petitioners challenging their criminal convictions or sentences, not habeas petitioners such as Chamblin who are challenging administrative detention decisions.

The Government has rehearsed these arguments before. It lost in the most recent case to appear in the reporters, <u>see</u> <u>Saldina v. Thornburgh</u>, 775 F. Supp. 507 (D. Conn. 1991). Among other things, the <u>Saldina</u> court concluded that the statutory language means what it says and that it covers INS detainees petitioning for habeas corpus:

> The clear construction of this statute is that any indigent person seeking habeas corpus relief under the provisions of Title 28 is entitled to CJA representation when the interest of justice so requires. This statute is not ambiguous, vague, or confusing. . . . Section 2241 provides relief for

---

[1]<u>Romero Barcelo v. Brown</u>, 655 F.2d 458, 461 n.4 (1st Cir. 1981) ("The Criminal Justice Act has no application to civil cases <u>other than habeas petitions</u>." (emphasis added))

5

> prisoners in custody of the authority of the United States "in violation of the Constitution or laws or treaties of the United States."  This remedy has never been viewed as available only to challenge criminal convictions.  The canon of statutory construction is that Congress is presumed to understand the judicial background against which it legislates.

Saldina, 775 F. Supp. at 508 (citations omitted); see also

Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992)

(Congress is presumed to mean what it says when statutory

language is unambiguous); see generally Goncalves, 144 F.3d at

120 ("Aliens in custody of federal immigration officials have

traditionally been able to obtain review of immigration decisions

by petitioning for a writ of habeas corpus under what is now §

2241.").  I find Saldina persuasive.

In a portion of its brief littered with emphatic

underlining, the Government argues that the statutory language

does not authorize CJA appointments for all habeas petitioners,

despite the plain language.  Notably, according to the

Government, it is part of the Criminal Justice Act, codified in

Title 18 ("Crimes and Criminal Procedure"), and contained within

section 3006A, entitled "Adequate representation of defendants."

These factors are inconsequential.

"'[T]he title of a statute . . . cannot limit the plain

meaning of the text. For interpretive purposes, [it is] of use only when [it] shed[s] light on some ambiguous word or phrase.'" Pennsylvania Dep't of Corrections v. Yeskey, 524 U.S. 206, 212 (1998) (brackets and ellipsis in original) (quoting Trainmen v. Baltimore & Ohio R. Co., 331 U.S. 519, 528-529 (1947)). The Government highlights no ambiguity in the phrase at issue: "representation may be provided for any financially eligible person who . . . is seeking relief under section 2241, 2254, or 2255 of title 28." Congress could have included restrictive language in section 3006A to ensure that it would cover only those petitioners challenging their convictions or sentences, but it did not. The inclusion of the reference to section 2241 in the statute conveys an intent to authorize CJA appointments for habeas petitioners who, like INS petitioners, may not base their claims on sections 2254 and 2255.

The Government's effort to create ambiguity from the context loses force upon further inspection. The title of the provision, "Adequate representation of defendants," does not define its scope. Section 3006A indisputably authorizes the appointment of counsel for, among other things, such non-defendants as habeas petitioners and persons in custody as material witnesses. See 18

7

U.S.C. § 3006A(a)(1)(G); 3006A(a)(2)(B); see also H. Rep. No. 417, 99th Cong., 1st Sess. 13 (1985), reprinted in 1986 U.S.C.C.A.N. 6165, 6175 ("the word 'person' has been substituted for the word 'defendant' in this subsection [ § 3006A(b)], and elsewhere in the CJA, to reflect the fact that counsel may be appointed for habeas petitioners and material witnesses as well as for persons charged with a crime.").

The Government contends that the legislative history reflects an intent to restrict CJA appointments to habeas petitioners challenging their criminal convictions and sentences. I disagree.

> In the first place, courts must look primarily to statutory language, not to legislative history, in determining the meaning and scope of a statute. When a statute's text is encompassing, clear on its face, and productive of a plausible result, it is unnecessary to search for a different, contradictory meaning in the legislative record. . . .

> In the second place, legislative history that is in itself inconclusive will rarely, if ever, overcome the words of a statute. . . . [A]n inquiring court, at most, should resort to legislative history only to determine "whether there is a 'clearly expressed legislative intention' contrary to [the statutory] language, which would require [the court] to question the strong presumption that Congress expresses its intent through the language it chooses."

Rhode Island v. Narragansett Indian Tribe, 19 F.3d 685, 697-98

8

(1st Cir. 1994) (citations omitted).

Even if it were appropriate to mine the legislative history where the statutory language itself is unambiguous, nowhere in the relevant cited legislative history is there a clearly expressed intention contradictory to the plain language. References to criminal defendants or criminal proceedings are inconclusive and may simply reflect that prisoner petitions under sections 2254 and 2255 comprise the vast majority of habeas corpus petitions filed in federal court. See, e.g., S. Rep. No. 790, 91st Cong., 2d Sess. 1 (1970) (provision reworded to extend coverage to "additional facets of the criminal trial process and related proceedings").[2]

The Government specifically cites a portion of a House report stating that habeas proceedings "have traditionally been regarded as technically civil in nature rather than criminal," so that "no right to appointed counsel has as yet been recognized under the sixth amendment," and that the proceedings covered by

---

[2]Chamblin's case shows that a habeas corpus petition challenging administrative detention may also relate to a criminal trial:  the administrative orders of detention and deportation were consequences of Chamblin's criminal convictions, cf. United States v. Gonzalez, 2000 WL 39120, *5-*7 (1st Cir. Jan. 24, 2000) (deportation is collateral consequence of guilty plea).

9

the CJA "are intimately related to the criminal process."  H.R. Rep. No. 1546, 91st Cong., 2d Sess., reprinted in 1970 U.S.C.C.A.N. 3982, 3988.  This passage does not evince a legislative intent contrary to the plain language of the statute when it is construed in context.

The passage appears with citations to two cases that did not involve petitions for habeas corpus arising from criminal convictions.  See In re Gault, 387 U.S. 1 (1967) (habeas challenge to juvenile detention) & Johnson v. Avery, 393 U.S. 483 (1969) (habeas corpus proceeding in which Court ruled that denial of access to jailhouse lawyer constituted impairment of writ).  The cases are cited as matters involving the "deprivation of personal liberty," in which "the distinction between civil and criminal . . . has become increasingly obscure."  The citation to these cases and the reference to a deprivation of personal liberty in this passage may indicate a legislative intent to provide authority to appoint counsel in all cases which involve a deprivation of personal liberty.  See Saldina, 775 F. Supp. at 509.  In any event, the cited portion of the House report does not clearly express a legislative intent contrary to the plain language of the statute.  See id.

10

The Government points out that an earlier form of section 3006A originally contained language, deleted in 1986, that characterized the habeas petitioners eligible for CJA appointments as persons "seeking collateral relief." Specifically, section 3006A(a) formerly required district courts to operate a plan to appoint counsel for persons "seeking collateral relief, as provided in subsection (g)." Subsection (g) formerly authorized appointments for indigent persons "seeking relief under 2241, 2254, and 2255 of Title 28." The Government, citing Perez-Perez, contends that (1) the inclusion of the qualifying term "collateral relief" in the statute limited the authority to make a CJA appointment for an INS detainee; and (2) Congress's deletion of this language in a clarifying amendment did not expand the authority under section 3006A.

There are several problems with the Government's argument and its reliance on Perez-Perez. The term "person . . . seeking collateral relief" does not plainly exclude INS detainees from the fold of petitioners who may be appointed counsel under the CJA. An INS detainee's petition may be functionally equivalent to a direct appeal, see Goncalves, but it remains properly classified as a collateral challenge to the extent that there is

11

no right to appeal INS decisions directly to the district court, see, e.g., Jurado-Gutierrez v. Greene, 190 F.3d 1135, 1146 (10th Cir. 1999) (distinguishing between direct judicial review and collateral relief available through habeas corpus petition of aliens in deportation proceedings), petition for cert. filed, No. 99-7964 (Jan. 31, 2000).

In any event, the term "collateral relief" is no longer part of the relevant statute. Congress restructured the provision in 1986, deleted the term, and did not insert any qualification on the scope of section 3006A(a)(2)(B). As noted by Saldina, the reliance of the Perez-Perez decision on a term that is no longer included in the statute "logically restricts application" of the case. Saldina, 775 F. Supp. at 509.

As noted by Saldina, Congress's characterization of the 1986 amendment as "for purposes of clarity only" does not add any weight to the Government's argument:

> Possibly Congress felt it necessary to clarify any conflicting interpretations of the phrase "collateral relief." By removing the phrase without substituting language restricting the appointment of counsel in habeas proceedings, one might infer that the [Perez-]Perez interpretation was not the victorious version. Alternatively it is possible that the amendment was purely technical in nature, in which case, Congress, in direct contrast to the [Perez-]Perez court's analysis, obviously placed little or no significance on the

12

phrase "collateral relief."

Saldina, 775 F. Supp. at 510.

As to the remainder of the Government's arguments, I fully concur with Saldina. In countering the Government's contention that appointing counsel under the CJA to INS detainees who are petitioning for habeas corpus undermines Congress's intent not to have the Government pay for counsel in INS administrative hearings, Saldina effectively uses an analogy to the Social Security review scheme.

Accordingly, I conclude that 18 U.S.C. § 3006A(a)(2)(B) means what it says and thus authorizes the appointment of counsel to represent INS detainees petitioning for writ of habeas corpus under 28 U.S.C. § 2241.

B. **CJA Statutory Cap**

The CJA caps attorney's fees for habeas corpus representation at $750.00. See 18 U.S.C. § 3006A(d)(2). The court may award fees in excess of the cap when the representation is extended or complex, if the court certifies that the amount of the excess payment is necessary to provide fair compensation:

> Payment in excess of any maximum amount provided . . .
> may be made for extended or complex representation
> whenever the court in which the representation was
> rendered . . . certifies that the amount of the excess

13

> payment is necessary to provide fair compensation and the payment is approved by the chief judge of the circuit.

18 U.S.C. § 3006A(d)(3).

Extended representation connotes a "substantial investment of time," while "'[c]omplex' representation refers to the intricacies of the case and their corresponding call on counsel's intellectual resources." United States v. Bailey, 581 F.2d 984, 987 (D.C. Cir. 1978). Only reasonably competent and productive time is deserving of recompense under the CJA. See id. at 988; accord United States v. Carnevale, 624 F. Supp. 381, 384 (D.R.I. 1985).

This case required extended and complex representation under these definitions. The matter involved a petition for writ of habeas corpus brought by a legal resident alien seeking a hearing on relief from deportation and release from custody pending the outcome of the deportation process. There were a number of factual and procedural complexities arising from the fact that petitioner's case had been pending in the Immigration Court for more than eight years, as well as resulting from petitioner's voluminous pro se filings in this court and in the First Circuit Court of Appeals. In addition, adequate representation in the

14

habeas corpus case required counsel to pursue an administrative petition for release from custody.  The complex procedural and factual issues are set forth more fully in counsel's memorandum in support of his motion for excess fees.

Furthermore, the case involved complex legal issues, arising from Congress's recent amendments to the immigration laws. Parsing through the applicable provisions was no easy task.  The issues related to matters pending before the United States Supreme Court at the time that they were briefed in this court, see, e.g., Goncalves v. INS, 144 F.3d 110 (1st Cir. 1998), cert. denied, 119 S. Ct. 1141 (1999), as well as a controversial statutory provision on which scant case law existed at the time: the constitutionality of the mandatory detention law for certain classes of deportable aliens.  Among other things, I note that the INS itself had difficulty construing the relevant statutory and regulatory provisions, since revised its interpretation of a relevant statute, 8 U.S.C. § 1226, to permit Chamblin to be released after I issued a Report and Recommendation in Chamblin's favor.

Throughout the course of his representation of petitioner, counsel did a fine job of handling a factually and procedurally

15

complex matter and elucidating intricate, evolving issues in immigration law. The time expended by his office (more than 200 hours over ten months) was spent productively and effectively. The Government cites to no specific cost entry or fee entry that is otherwise objectionable.

## Conclusion

For the foregoing reasons, the motion for attorney's fees in excess of the statutory limit (document no. 47) should be granted, and the excess payment should be certified for payment to the chief judge of the circuit, as necessary to fairly compensate counsel for extended and complex representation.

Any objections to this Report and Recommendation must be filed within ten days of receipt of this notice. Failure to file an objection within the specified time waives the right to appeal the district court's order. See Unauthorized Practice of Law Committee v. Gordon, 979 F.2d 11, 13-14 (1st Cir. 1992); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).

_____
James R. Muirhead
United States Magistrate Judge

Date: February 28, 2000

cc:   Steven M. Gordon, Esq.
       Peter E. Papps, Esq.
       Thankful T. Vanderstar, Esq.